STATE *ex rel.* BROWN *v.* CHRISTMAS.
STATE *ex rel.* GUESS *v.* MILLER.

[88 South. 881, In Banc. Nos. 21968, 21969.]

1. OFFICERS. *"Office" and "officers" defined.*
   An "office," broadly speaking, is a public charge or employment, and a public "officer" is one who has some duty to perform concerning the public; but in the constitutional sense the term "office" implies a delegation of a portion of the sovereign power and possession of it by person filling the office.

2. OFFICERS. *Statute making deputy auditor removable at pleasure of auditor is valid officer.*
   A deputy auditor appointed by the auditor of public accounts *held* not an officer within Const. 1890, sections 20, 175; hence Code' 1906, section 236 (Hemingway's Code, section 3495), authorizing his removal at the pleasure of the auditor, is valid.

3. OFFICERS. *Employment of deputy land, commissioner, held to cease upon qualification of successor.*
   A deputy land commissioner is not an officer, and on the death of the commissioner his employment ceases when a successor has qualified for the deceased principal, in view of Code 1906, section 3487 (Hemingway's Code, section 2825).

APPEAL from circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Separate proceedings in *quo warranto* by the state on the relation of B. F. Brown, and of Ben R. Guess against Thomas R. Christmas and R. S. Miller, respectively. From a dismissal of the petition in each case relator appeals. Affirmed.

In No. 21968:

*M. A. Pilgrim* and *Crisler & Crisler,* for appellant.

*Geo. Butler* and *Hamilton & Hamilton,* for appellee.

In No. 21969:

*M. A. Pilgrim,* for appellant.

As we see it the sole question before this court to be determined is whether or not the deputy land commissioner is a public officer. For the convenience of the court we here quote chapter 197, Laws of 1910, being the statute creating the office of deputy land commissioner.

"Section 1. Be it enacted by the legislature of the state of Mississippi, that section 2904, of chapter 77, of the Mississippi Code of 1906, be, and the same is hereby amended, so as to read as follows:

"2904. (2566). Land Commissioner. There shall be a land commissioner, who shall be elected as other state officers are at the general election, whose term of office shall be four years, and until his successor shall have been qualified. He shall possess the same qualifications as are required for the secretary of state, and shall qualify as other state officers. The land commissioner shall be entitled to one deputy to assist him in the discharge of his duties, with power and authority to do and perform all acts and duties required by the land commissioner. The appointment shall be made in writing and filed in the office of secretary of state, with a certificate that the deputy has taken oath, and given bond in the sum of five thousand dollars, to faithfully discharge his duties as deputy. The said deputy shall receive such compensation as shall be provided by law."

Now the question as we see it is whether or not the above cited statute created a public office or a mere employment. To determine this fact we shall examine the authorities. After a careful examination of all the leading authorities we can draw no other conclusion than that chapter 197, Laws of 1910, created the office of. deputy land commis-

sioner a public office. We quote a few of the leading authorities on this question:

Bouvier's Law Dictionary gives the following definition of an office: "The true test is that it is a parcel of the administration of government. . . . The term includes all persons in any public station or employment conferred by the government." "The term of an officer is not affected by vacating the office of his superior."

In the case of *United States* v. *Hartwell,* 16 Wal. 393, 18 L. E. D. 830, we find the following: "The duties of an officer are defined by law not by contract."

In the case of *United States* v. *Maurice,* 2nd Brock, 96 (U. S.) Chief Justice WHITE gives a very clear and concise definition: "An office is defined to be a public charge or employment, and he who performs the duties of the office is an officer. Although an office is an employment it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act or to perform services without becoming an officer."

Referring to the case of United States v. Hartwell, 16 Wal. 385. (U. S.) we find this definition: "An office is a public station or employment, conferred by the appointment of the government. The term embraces the idea of tenure, duration, emolument and duties. . . . A government office is different from a government contract. The latter, from its nature, is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent from the other."

*Clark* v. *Stanley,* 66 N. C. 59, gives the following definition: "A public office is an agency for the state, and the person whose duties it is to perform this agency is a public officer."

Quoting from 3 Words and Phrases, page 696: "The term 'public office' implies permanence and duties of a public nature. An office is a position or station in which a person is employed to perform certain duties, or by vir-

tue of which he becomes charged with the performance of certain duties." Page 698. "The general doctrine is that the idea of office clearly embraces the ideas of tenure, duration, fees, or emolument, rights and power as well as that of duty." Page 699. "Apart from the statute, the distinction between a public officer and an employee is that the former is charged with duties involving the exercise of some part of the sovereign power in the performance of which the public is concerned, and which are continuing and not occasional, while one merely performing duties required of him under an express contract or otherwise, though the employer is a public officer and the employment being a public work or business, is a mere employee." Page 700.

"While generally speaking, an officer is one employed in behalf of a government; in a strict legal sense, the term implies employment in some fixed and permanent capacity. Those engaged in mere transient or occasional employment being more properly employees than officers." "The term 'office' implies a delegation of a portion of the sovereign power, too, and possession of it by the person filling the office; and exercise of such power within legal limit constitutes the correct discharge of duties of such office."

On page 697, at the bottom of the second column will be found a citation which quotes Meachem on Public Officers at length and from which we quote a part as follows: "The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of the government, to be exercised by him for the benefit of the public that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being, to be exercised for the public benefit." Page 697.

An office in an abstract sense may be defined as: "A duty, charge, or trust; a place of trust; a position to which certain duties are attached; a right and correspondent

duty to execute a public or private trust and to take emoluments belonging to it." 29 Cyc. 1361. "Opposed to the conceptions of office and officers are those of employment and employee. While an office is based upon some provisions of law, an employment is based upon a contract entered into by the government with the employee."

In Meachem on Public Officers, section 1 a public office is defined as follows: "The right authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public. The individual so invested is a public officer."

As to whether a deputy, in the general sense, is a public officer we quote from Meachem on Public Office, section 38: "Deputies. Whether deputies appointed by public officers are to be regarded as public officers themselves, depend upon the circumstances and methods of their appointment. When such appointment is provided for by law, and *a fortiori* where it is required by law, which fixes the power and duty of such deputies, and where such deputies are required to take the oath of office and to give bonds for the performance of their duties, the deputies are usually regarded as public officers."

But, we find that we are not left to determine as a general principle of law the correct definition of a public officer, as this point has been definitely settled by this court in many former decisions.

"A public officer is one who has some duty to perform concerning the public, and he is not the less a public officer when his duty is confined to narrow limits, because it is the duty and the nature of that duty which makes him a public officer, and not the extent of his authority. This was laid down by the court in the following cases: *Monette* v. *State,* 91 Miss. 662, 44 So. 989; *Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec. 169; *Kiersky* v. *Kelley,* 80 Miss. 803, 31 So. 901, and *Ellis* v. *Greaves,* 82 Miss. 36, 34 So. 81, and

cited with approval in *Yerger* v. *State,* 91 Miss. 802, 45 So. 849.

Having examined all the authorities and definitions of a public officer we find that the deputy land commissioner as created by chapter 197, Laws of 1910, has every requisite of a public officer, required by all the leading authorities, including the former decisions of this court.

*Clayton D. Potter,* for appellant.

The principal question for determination here is whether or not the office of deputy auditor is an office within the meaning of section 20 and section 175 of the Constitution of the state.

Section 20 is as follows: "No person shall be elected or appointed to office in this state for life or during good behavior, but the term of all offices shall be for some specified period."

Section 175 of the Constitution is as follows: "All public officers, for willful neglect of duty or misdemeanor in office shall be liable to presentment or indictment by a grand jury; and upon conviction, shall be removed from office, and otherwise punished as may be prescribed by law."

If the office of deputy auditor is a state office within the meaning of the constitution then that portion of section 236, Code of 1906, the same being section 3495, of Hemingway's Code, authorizing the auditor of public accounts, to remove the deputy auditor at pleasure is unconstitutional under the decision of the court in the case of *Mississippi State Board* v. *Mathews,* 74 So. 418. In that case sections 2490 and 2491 of the Code of 1906 were considered.

Section 2491, Code of 1906, is as follows: "A competent physician shall be appointed county health officer for and from each county by the state board of health whose term of office shall be for two years, and said board shall cause the appointment to be certified by its secretary to the board of supervisors of the county for which the appointment

was made; but if the board of supervisors of an interior county remote from the railway, navigable stream, and the sea coast, shall indicate its desire not to have a county health officer for its county, the state board of health, if deemed prudent, need not appoint one for such county, or having appointed one, may revoke the appointment."

Section 2490, of the Code is as follows: "The state board of health may at any meeting remove any county health officer, or its president or secretary, from office and fill the vacancy thereby occasioned, or it may fill a vacancy in either of said offices whenever and however it occurs; and when a county health officer shall be removed or his successor appointed, notice thereof shall be sent and certified to the board of supervisors of the county."

The constitutionality of the provisions of section 2490 of the Code of 1906, conferring on the state board of health the power to remove county health officers was challenged in that suit and our court held that a county health officer is a public officer, and that the way pointed out by section 175 of the constitution, that is by the way of indictment and conviction is the exclusive method of removing such officer, and that portion of section 2490 of the Code which confers on the board of health the power to remove a county health officer is unconstitutional.

In that case, Judge SMITH said: "Section 175 of our constitution provides the exclusive method by which a public officer may be removed from office. *Kunnels* v. *State,* Walk. 146; *Hyde* v. *State,* 52 Miss. 665; *Ex parte Lehman,* 60 Miss. 967; *Lizano* v. *City of Pass Christian,* 96 Miss. 640, 50 So. 981; *Mayor, etc.* v. *State,* 102 Miss. 663, 59 So. 873, Ann. Cas. 1915A, 1213. Consequently section 2490, Mississippi Code of 1906, in so far as it authorizes the state board of health to remove a county health officer, is void."

If the office of deputy auditor is a public office within the meaning of our constitution, no other term of office having been provided, then section 2456 is applicable. This section is as follows: "The term of office of all officers, not

otherwise provided for by law, shall be four years and until their successors shall be duly qualified." *State* v. McDowell, 111 Miss. 596, 71 So. 867.

We therefore, contend that the office of deputy auditor is a public office within the meaning of our constitution and that the term of office of such deputy auditor was a four-year term of office. I do not think that there can be any question as to this point. Then the main question to be determined is whether or not the office of deputy auditor is a public office within the meaning of sections 20 and 175 of the Constitution of Mississippi.

Discussion of the question of whether or not the office of deputy auditor is a public office within the meaning of sections 20 and 175 of the constitution of Mississippi.

In Meachem on Public Officers, section 1, a public office is described as: "The right, authority and duty, created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public. The individual so invested is a public officer."

As to whether a deputy, in the general sense, is a public officer, Meachem on Public Officers, section 38, says:

"Deputies. Whether deputies appointed by public officers are to be regarded as public officers themselves, depends upon the circumstances, and method of their appointment. When such appointment is provided for by law, and *a fortiori* where it is required by law, which fixes the power and duty of such deputies, and where such deputies are required to take the oath of office and to give bonds for the performance of their duties, the deputies are usually regarded as public officers."

In the case of *Yerger* v. *State*, 91 Miss. 802, 45 So. 849, our court held that the clerk of the board of penitentiary trustees was a public officer.

In the case of *Bonette* v. *State*, 91 Miss. 670, our court speaking through Judge Mayes said: "We have no hesi-

tancy in declaring that a policeman is an officer within the meaning of section 20 of the Constitution of the state of Mississippi, and must be appointed for some specified time. Any law or ordinance which provides for the appointment of such an officer during good behavior is in violation of this section and void. In the case of *Shelby* v. *Alcorn,* 36 Miss. 273, on page 289, 72 Am. Dec. 169, this court held that a public officer is one who has some duty to perform concerning the public; and he is not the less a public officer when his duty is confined to narrow limits, because it is the duty and the nature of that duty, which makes him a public officer, and not the extent of his authority." *Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec. 169; *Kiersky* v. *Kelly,* 80 Miss. 803, 31 So. 901; *Johnson* v. *State,* 132 Ala. 43, 31 So. 493. The section of the constitution referred to above contemplates all persons who have any duty to perform concerning the public under any law of this state, whether it be under an act of the legislature, the constitution of the state, or a municipal ordinance. The ordinance in question not providing for a specified term of service for the policeman of the city, but authorizing the appointment during good behavior, is void."

Applying the rule of the above case to the case at bar there can be no question whatever that the deputy auditor is a public officer within the meaning of our constitution. It cannot be denied that the deputy auditor has public functions to perform, and under the rule announced originally in the case of *Shelby* v. *Alcorn,* 36 Miss. 273, and followed to this date, it is a well-settled principle of law that any officer who has any duty to perform concerning the public, under any law of this state, is a public officer within the meaning of our constitution.

In the case of *Ellis* v. *Greaves,* 82 Miss. 36, the trusteeship of public school was held to be a public office. In the case of the *State of Missouri* v. *Bus,* 33 L. R. A. 616, the supreme court of Missouri held that a deputy sheriff is a public officer under laws which require his appointment by

the sheriff to be approved by a judge and that he shall take an oath of office, or qualify for a public office.

*John W. Crisler* and *Chas. W. Crisler,* for appellant.

The only question that presents itself to this court for determination, under the opinion of the trial judge, is whether or not, chapter 197 of the laws of 1910, amendatory to section 2904 of the Code of 1906, which said chapter created the office of the deputy land commissioner, in such, that one holding appointment under the said section, is a public officer.

If, therefore, the statute creating the office of the deputy land commissioner makes him a public officer, it naturally follows that he is such a public officer as comes within the meaning of section 20 of the constitution and section 3456 of the Code of 1906.

Section 20, of the Constitution of this state reads as follows: "No person shall be elected or appointed to office in this state for life or during good behavior, but the term of all officers shall be for a term or specified period." Sec. 3456, of the Code reads as follows: "Length of terms. The term of office of all officers, not otherwise provided for by law, shall be four years and until their successor shall be duly qualified."

We therefore submit that the question for consideration before this court, is whether or not the statute creating this office is such, that one holding same, is a public officer. Meachem on Public Officers, section 1.

As to whether a deputy, in the general sense, is a public officer. Meachem on Public Officers, section 38. In the case of *Yerger* v. *State,* 91 Miss. 802, 45 So. 849, this court held that the clerk of the board of penitentiary trustees was a public officer. But we are not left to determine as a general principle of law the correct definition of a public officer, for the reason that this point has been definitely settled by many decisions of this court.

"A public officer is one who has some duty to perform concerning the public, and he is not the less a public officer when his duty is confined to narrow limits, because it is the duty and the nature of that duty which makes him a public officer, and not the extent of his authority." This was laid down by the court in the following cases: *Monette* v. *State,* 91 Miss. 662, 44 So. 989; *Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec. 169; *Kiersky* v. *Kelly,* 80 Miss. 803, 31 So. 901, and *Ellis* v. *Greaves,* 82 Miss. 36, 34 So. 81, and cited with approval in the case of *Yerger* v. *State, supra.*

It is the contentions of the appellant in this matter that the intention of the legislature in creating the office of the deputy land commissioner that the tenure of his office should be the same as that fixed for other public officers. We submit that had this not been the intentions of the legislature, they would have set out the fact that the principal had the right to discharge the deputy at his pleasure. *State* v. *Diverberger,* 90 Mo. 369 and State v. Bus, 33 L. R. A. 616.

The latter part of chapter 197 of the laws of 1910, reads as follows: "The land commissioner shall be entitled to one deputy to assist him in the discharge of his duties, with power and authority to do and perform all acts and duties required by the land commissioner. The appointment shall be made in writing and filed in the office of the secretary of state, with a certificate that the deputy has taken an oath and given bond in the sum of five thousand dollars to faithfully discharge his duties as deputy. The said deputy shall receive such compensation as shall be provided by law.

We submit that in view of the fact, that in every other case, creating the office of deputy, where the right to appoint was conferred upon the principal, there was a corresponding right for the principal to discharge at will or at pleasure. And in view of the further fact, that this very question has been passed upon by this court in the case of *Yerger* v. *State, supra,* and the further fact that this section above referred to was amended to create especially the

office of the deputy, we see no other conclusion than that of the deputy land commissioner being made a public officer by all intention of the legislature. *State* v. *Mc-Dowell*, 111 Miss. 596, 71 So. 867.

Section 175 of the Constitution, providing for the removal of all public officers, is as follows: "All public officers, for willful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury; and, upon conviction, shall be removed from office, and otherwise punished as may be prescribed by law. The method of removal is exclusive. *Runnel* v. *State*, Walker, 146; *Hyde* v. *State*, 52 Miss. 665; *Ex Parte Lehman*, 60 Miss. 967; *Lizano* v. *City of Pass Christian*, 96 Miss. 640, 50 So. 981; *Mayor etc. of Jackson* v. *State*, 102 Miss. 663, 59 So. 873; Ann. Cas. 1915A, 1213; *Ware* v. *State*, 111 Miss. 599, 71 So. 868; *Miss State Board of Health* v. *Matthews*, 74 So. 418; *State* v. *McDowell, supra*.

While it is a settled principle of law in our state, that a public officer cannot be removed from office except by indictment, we desire to call the attention of the court to further cases in which the matter of removal was discussed, when the statute providing for the appointment, did not confer upon the appointing power the right to discharge at pleasure. In Mechem on Public Officers, section 454, to the same effect is *Field* v. *Commonwealth*, 32 Pa. 478; *State* v. *St. Louis*, 90 Mo. 19, 1 S. W. 757; *Collins* v. *Tracey;* 36 Texas, 546, 23 Enc. Law. (2 Ed.) 435.

In so far as public officers are concerned, Code section 4017, provides that "remedy by information in the nature of a *quo warranto* shall lie, in the name of the state, etc." If, therefore, the deputy land commissioner is not a public officer, we submit that the right or remedy by information in the nature of a *quo warranto* will not lie.

*George Butler,* for appellee.

Section 20 of the state Constitution provides that no person shall be appointed to "office" for life or during good

behavior, but the term of all "offices" shall be for some specific period. Section 175 provides that all "public officers," for wilful neglect of duty, shall be liable to indictment by a grand jury, and upon conviction shall be removed from office.

Section 235 of the Mississippi Code of 1906 is as follows: "Deputy and clerks; how appointed, etc. The auditor may appoint a deputy, with power and authority to do and perform all the acts and duties required of the auditor; the appointment shall be made in writing, and shall be filed in the office of the secretary of state, with a certificate that the deputy has taken an oath faithfully to discharge his duties as deputy auditor. The auditor may take bond from his deputy and clerks as he may see proper, and may remove either at pleasure; but he shall be answerable for the acts of the deputy and clerks in the same manner as if done by himself. The auditor may employ four clerks to be paid the compensation provided by law."

The principal question is: Is the place or office of the deputy auditor, an "officer" within the meaning of section 20, and is relator a "public officer" within the meaning of section 175 of the state Constitution? The question is also presented as to whether an appointment in writing for an unlimited time can be shown by parol to be a temporary appointment? We will dispose of the last question first.

It will be noted that the statute does not require the auditor to appoint a deputy, but provides that he may do so. In the case of *State* v. *Fulkerson,* 10 Mo. 681, it is held that where the appointment is in writing, the term for which it was made may be shown by parol. This is the only authority we have found upon this subject.

Coming now to the main question, we propose to trace the history of section 236 of the Mississippi Code of 1906. This statute was first passed on February 19, 1842. Hutchinson's Code, page 401. By that act the auditor was "authorized" to appoint a deputy and remove him at pleasure, and substantially the same formalities for appoint-

ment were required as by section 236 of the Mississippi Code of 1906. The act of 1842 was brought forward with slight verbal changes, as article 29, page 107 of the Code of 1857. It was again brought forward as section 130, Code of 1870. Again as section 216, Code of 1880. Again as section 226, Code of 1892, and appears in its present form as section 236, Code of 1906.

In the Code of 1880 and the prior codes it is provided that the auditor is "authorized" to appoint a deputy with full power and authority to do and perform all duties and acts required of the auditor, and in the Codes of 1892 and 1906, it is provided the auditor "may" appoint a deputy with power and authority to do and perform all acts and duties required of the auditor. All of the acts provided that the auditor may remove the deputy at pleasure.

It should be noted also that section 30, article 1, of the Constitution of 1832 is practically the same as section 20 of the present Constitution, and section 28 of article 4 of the Constitution of 1832 is largely the same as section 175 of the present Constitution.

Section 30 of article 1 of the Constitution of 1869 is identical with section 20 of the Constitution of 1890, and section 26 of article 4 of the Constitution of 1869 is identical with section 28, article 4 of the Constitution of 1832, and largely the same as section 175 of the present Constitution.

It will thus be seen that the legislature, at least since 1842, has construed the office of deputy as not being an office within the meaning of the Constitution of this state. Moreover from time immemorial, sheriffs, clerks and other principal officers have discharged their deputies at will. That was the common practice prior to 1890 as well as subsequent. This contemporaneous construction by those whose duty it is to act under and administer the Constitution, is a material inquiry to the court in determining what was meant by the constitutional provisions.

We see that the legislature in 1842 did not consider that a deputy was an officer within the meaning of the Con-

stitution of 1832. The statute providing for the appointment and removal of a deputy auditor was in effect and had been in effect for twenty-seven years, when the Constitution of 1869 was passed, and it is fair to assume that the Constitutional makers knew of the existence of this statute when that Constitution was adopted, brought forward the provision authorizing the auditor to appoint a deputy, and to remove him at pleasure, and it is manifest that the legislature did not consider the deputy auditor was an officer within the meaning of the constitution of 1869.

The same may be said of the Constitution of 1890. The Code of 1880 provided that the auditor might appoint a deputy and remove him at pleasure, and such was the law when the Constitution of 1890 was adopted. These provisions were brought forward in the Code of 1892, indicating clearly the legislative construction of the Constitution.

We are entirely familiar with the Monette case, *Yerger* v. *State, Ware* v. *State, Brown* v. *State,* and *Board of Health* v. *Mathews.* We do not here question the correctness of the result reached in those cases, but the court will note that in each case there was a principal officer involved whose duty was defined by statute. We think, however, the court has in this line of cases, reached the limit.

We are well aware that the court in the Mathews case expressly held that a public officer within the meaning of section 175, could only be removed by indictment, as that section 175 provided the exclusive methods of removing public officers. We are not contesting the soundness of that decision in this case, but we think the court has pressed the doctrine to its extreme limit.

The point we make is that the place of function of deputy auditor is not an "office," and that therefore he is not an "officer" within the meaning of the state Constitution.

In determining this question it is proper to resort to the meaning of the word "deputy" at common law, and to ascertain what the framers of the Constitution meant in using the words, "public officers" and "office" in the Constitution.

At common law, any ministerial officer might discharge the duties of his office by a deputy, unless he was expressly required by law to discharge them in person. 9 Encyclopedia of Law, 270. The auditor is a ministerial officer, and while by the Constitution he is required to devote his time and attention to the duties of that office, yet if he is unable to perform all the duties of that office, he might appoint an agent, an assistant, or a deputy to assist him in executing these purely ministerial functions, even without statutory provisions. Sherwsburies Case, 9 Coke, 42; *Talbott* v. *Hoosier,* 12 Bush. (Ky.) 408.

There are not two offices, nor two incumbents. There is one office and one incumbent. He may, with or without the statute, appoint a deputy. Without the statute, the principal would have to provide for the deputy's compensation. Under the statute, if the principal sees fit to appoint a deputy, the state provides the compensation. The deputy has no interest in the office. He is a mere shadow of the principal. He does all things in the principal's name. He exercises no independent right, but discharges the duties and performs the functions of the auditor's office in the right of another, and he is his agent and representative. That this is so, is fundamental and recognized by practically all of the authorities, and cannot be successfully controverted.

"Definition. A deputy is one who, by appointment, exercises an office in another's right. 9 Am. & Eng. Enc. of Law, 39; Sherwsburies Case, 9 Coke, 42; *Talbott* v. *Hoosier,* 12 Bush. (Ky.) 408; *Erwin* v. *United States,* 37 Fed. 475; *Carter* v. *Hornback,* 139 Mo. 238; 9 Enc. of Law, 369; *Willis* v. *Melvin,* 53 N. C. 62; *Piland* v. *Taylor,* 113 N. C. 1.

All the authorities agree that a special deputy is not a public officer, and the great weight of authorities held that

a general deputy is not a public officer. The leading case upon this subject is *Warwick* v. *State*, 25 Ohio St. 21; *Nelson* v. *Troy*, 11 Wash. 435. To the same effect are *Willis* v. *Melvin*, 53 N. C. 62; *Coltraine* v. *McCain*, 3 Dev. L. (14 N. C.) 308; *Campbell* v. *Hewlitt*, 16 Q. B. 258, 71 E. C. L. (English Common Law) 258; *Wilson* v. *Russell*, 31 N. W. 645.

The statute under review does not require the auditor to appoint a deputy. The statute provides he "may" appoint one. It is optional with the auditor whether he shall, or shall not appoint a deputy, and if the duties of his office are such that he can discharge them without a deputy, he should not appoint one. We have seen that at common law, a deputy is a mere agent and assistant of the principal; that he acts in his principal's name, and the principal is responsible for his doings; that at common law, such employment was not an "office" and the employee not an "officer."

No doubt the legislature of 1842 had this definition in mind when the act providing for a deputy auditor was passed, and no doubt, subsequent legislatures and framers of the Constitution of 1890 and subsequent legislatures had this definition in mind. This contemporaneous construction by the legislatures since 1842, and the Constitutional makers since that date, as well as the contemporaneous constructions by the different departments of the state under these various statutes are. entitled to great weight. *Ott* v. *Lowrey*, 78 Miss. 487.

In fact this statute should not be declared unconstitutional, and unless it is so beyond a reasonable doubt and certainty, in view of the legislation upon this subject for a period of at least seventy-nine years, the court cannot say it is unconstitutional beyond a reasonable doubt. At common law, a general deputy is not required to make an oath of office. *Turner* v. *Holzman*, 54 Md. 159; *Willis* v. *Melvin*, 53 N. C. 62; *Puleston* v. *United States*, 85 Fed. 570; *Talbott* v. *Hooser*, 12 Bush. (Ky.) 408.

As showing that a deputy is not an officer, in the absence of a statute prescribing qualifications for a deputy, the principal has authority to appoint whomsoever he pleases, whether minors, women, or qualified electors. The authorities to this effect are practically unanimous. *Wilson* v. *Newton,* 87 Mich. 439; *Warwick* v. *State,* 25 Ohio St. 24; *Jefferies* v. *Harrington,* 11 Cole 191; *Herkenreader* v. *State,* 35 Tex. C. R. 243. Wherein the cases of *Wilson* v. *Newton, supra* and *Jefferies* v. *Harrington, supra,* are approved. *State* v. *Philps,* 5 S. Dak. 480, where *Wilson* v. *Newton Warwick* v. *State,* and *Jefferies* v. *Harrington, supra,* are approved. *State* v. *Taylor,* 36 S. C. 515, followed and approved in *Railroad* v. *Fisher,* 109 N. C. 1.

As showing that the deputy is the mere agent of the principal and not an independent officer, and in exercising the duties of an independent office, he is required to act in the name of the principal, he is his agent and should act in his name. *Perkins* v. *Reed,* 14 Ala. 536; *Rowley* v. *Howard,* 23 Cal. 402; *Schott* v. *Youree,* 142 Ill. 233; *Abrams* v. *Erwin* 9 Iowa, 87; *Evans* v. *Wilder,* 7 Mo. 359; *Carter* v. *Cornback,* 139 Mo. 238; *Anderson* v. *Brown,* 9 Ohio, 151; *Denison* v. *Story,* 1 Oregon, 273; *Winbish* v. *Wofford,* 33 Texas, 109; *Arnold* v. *Scott,* 39 Texas, 378; *McNutt* v. *Livingston,* 7 S. & M. 641; *Greenwood* v. *State,* 17 Ark. 332; *Banner* v. *McMurry,* 1 Dev. L. (12 N. C.) 218; *Smith* v. *Cousler,* 83 Ky. 367; *Beardman* v. *Holliday,* 10 Paige (N. Y. 223. And the death of the principal terminates the authority of the deputy, because the deputy is a mere agent. *Anderson* v. *Brown,* 9 Ohio, 151; *Lane* v. *Cotton,* 1 Salk. 17, 91 English Reports reprint 17; *Taylor* v. *Kercheral,* 82 Fed. 501.

The legislature recognized this rule in enacting section 3487 of the Mississippi Code of 1906. That the deputy is merely the agent of the principal, fills no independent office, discharges no independent functions and acts for and in the name of the principal, and that the death of the principal terminates the agency, is clearly recognized in the case of *McRee* v. *Swalem,* 81 Miss. 679.

The statute clearly contemplates that the deputy is to be under the sole direction of the principal. If not, why was the auditor given the power to discharge the deputy? Moreover, if the business of the office does not require an assistant, the auditor should dispense with the deputy. He is not required to have one, but may do so.

It is respectfully submitted that a deputy auditor is not an officer within the meaning of the Constitution; that he does not hold an office, but that he is a mere agent or assistant to the principal; that the auditor had a right to remove relator from the office and appoint another deputy.

SMITH, C. J., delivered the opinion of the court.

These two cases involve the same question of law, and will be decided together.

On August 26, 1920, M. A. Brown, the then land commissioner, appointed the relator, B. F. Brown, as his deputy, pursuant to section 2904, Code of 1906 (section 5239, Hemingway's Code), which provides that:

"The land commissioner shall be entitled to one deputy to assist him in the discharge of his duties, with power and authority to do and perform all acts and duties required by the land commissioner. The appointment shall be made in writing, and filed in the office of secretary of state, with a certificate that the deputy has aken an oath, and given bond in the sum of five thousand ($5,000) dollars, to faithfully discharge his duties as deputy.

In January, 1921, M. A. Brown died, and R. D. Moore, who was appointed by the Governor to succeed him, appointed the appellee, Thomas R. Christmas, as his deputy. B. F. Brown claiming that a land commissioner's deputy is a public officer, whose office does not terminate with the death of his principal, instituted a proceeding in the nature of a *quo warranto* to oust the defendant, Christmas. In January, 1920, the present auditor of public accounts appointed the relator, Ben R. Guess, as his deputy pursuant

to section 236, Code of 1906 (section 3495, Hemingway's Code), which provides that:

"The auditor may appoint a deputy, with power and authority to do and perform all the acts and duties required of the auditor; the appointment shall be made in writing, and shall be filed in the office of the secretary of state, with a certificate that the deputy has taken an oath faithfully to discharge his duties as deputy auditor. The auditor may take bond from his deputy and clerks as he may see proper, and may remove either at pleasure; but he shall be answerable for the acts of the deputy and clerks in the same manner as if done by himself."

On February 1, 1921, the auditor discharged Guess and appointed the appellee, R. S. Miller, as his deputy. Guess, claiming that an auditor's deputy is a public officer, and that consequently the provision of section 236, Code of 1906 (section 3495, Hemingway's Code), authorizing the auditor to remove his deputy at pleasure, violates sections 20 and 175 of the Constitution, instituted a proceeding in the nature of a *quo warranto* to oust Miller. The trial in each case in the court below resulted in the dismissal of the petition.

Section 20 of the Constitution provides that:

"No person shall be elected or appointed to office in this state for life or during good behavior, but the term of all offices shall be for some specified period."

Section 175 of the Constitution provides that: "All public officers, for willful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury; and, upon conviction, shall be removed from office, and otherwise punished as may be prescribed by law."

Section 3456, Code of 1906 (section 2794, Hemingway's Code), provides that:

"The term of office of all officers, not otherwise provided for by law, shall be four years, and until their successors shall be duly qualified."

The question presented in each case for decision is:  Is a mere deputy of a public officer within the meaning of sections 20 and 175 of the Constitution?

An office, broadly speaking, is a public charge or employment, and a public officer, also broadly speaking, is one who has some duty to perform concerning the public; but in the constitutional sense—"The term 'office' implies a delegation of a portion of the sovereign power, and the possession of it by the person filling the office." *Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec. 169.   .

This definition carries with it *ex vi termini* the further idea that the power delegated must be exercised by the person in his own, and not in another's right.  A deputy does not come within the definition, for a deputy is—"One who is appointed, designated, or deputed, to act for another; one who by appointment exercises an office in another's right."  18 C. J. 784.

The statutes providing for the appointment of the two deputies here in question confer no power on them to be exercised independently of their principals, but power to be exercised only for and in the name of their principals. In so far as the deputy auditor is concerned, the legislature could not confer upon him power to be exercised in his own right which under the Constitution belongs to his principal, for there would then be, in effect two auditors, and the Constitution provides for only one.

The legislature has uniformly construed sections 20 and 175 of the Constitution as not embracing mere deputies, as will appear from an examination of our statutes enacted since the adoption of those sections, and this construction should not only be accepted by the courts, unless manifestly wrong, but is also in accord with the fact.

The case of *Baker* v. *Nichols,* 106 Miss. 419, 63 So. 1025, in which this court held that the position of a deputy sheriff is an office within the meaning of section 250 of the Constitution which provides that "all qualified electors, and no others, shall be eligible to office, except as otherwise provided in this Constitution," is not in conflict herewith, for

the ground of that decision is that section 4664, Code of 1906 (section 3081, Hemingway's Code), by which the position of deputy sheriff is created, expressly designates it as an office.  The position of clerk of the board of trustees of the penitentiary, which was held to be an office in *Yerger* v. *State,* 91 Miss. 802, 45 So. 849, is also designated as such by section 3598, Code of 1906 (section 6220, Hemingway's Code), by which it is created, and the term fixed at one year.

A deputy auditor not being an officer within the meaning of sections 20 and 175 of the Constitution, the provision of the statute authorizing the auditor to remove him at pleasure is valid.

The deputy land commissioner not being an officer, and the statute containing no provision that can be construed to the contrary, the employment of the relator, Brown, as such would have ceased on the death of his principal except for the provision of section 3487, Code of 1906 (section 2825, Hemingway's Code), that, "if any state or county officer shall die having a deputy, the deputy may continue to discharge the duties of the office in the name of the deceased officer as if he had not died, until the vacancy in the office shall be filled according to law," etc., under which the relator's employment ceased when his deceased principal's successor qualified as such.

*Affirmed.*